BWB:MKM
F.#2011R02091

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

       - against -              12-CR-64 (KAM)

YURI BERSHCHANSKY,

           Defendant.

- - - - - - - - - - - - - - - -X

GOVERNMENT'S POST-HEARING BRIEF IN FURTHER
IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

M. Kristin Mace
Assistant U.S. Attorney
(Of Counsel)

## PRELIMINARY STATEMENT

Following an evidentiary hearing on May 14, 2012, and in response to the defendant Yuri Bershchansky's post-hearing brief, the government respectfully submits this memorandum of law in further opposition to the defendant's motion to suppress pre-arrest admissions and evidence seized from his home pursuant to a search warrant.

The uncontested evidence presented at the hearing demonstrates that the defendant was not in custody at the time that he made un-Mirandized statements because he was at least twice informed that he was not under arrest and was free to go, his mother freely exited the house in view of the defendant, the defendant consented to be interviewed and at no point indicated that he wanted the interview to end or that he did not want to speak with agents, at no point during the interview was the defendant physically restrained in any way, and the defendant was not arrest until almost a year after the interview. Despite these established facts, the defendant continues to claim, without support, that he was in custody and that his statements should be suppressed. The defendant also persists in arguing, contrary to the law, that the search warrant for his residence was not supported by probable cause, and that the underlying affidavit contained false or misleading statements, although he has never identified a single such misstatement. For the

1

reasons set forth below, and those in the government's Opposition to the Defendant's Motion to Suppress,[1] the government respectfully submits that the defendant's arguments are legally and factually meritless and that his motion should be denied in its entirety.

## STATEMENT OF FACTS

On January 31, 2011, agents from the Department of Homeland Security, Homeland Security Investigations ("HSI"), searched the defendant's apartment pursuant to a search warrant signed by U.S. Magistrate Judge Joan Azrack. See Complaint 11-M-1249, dated December 19, 2011 ("Complaint"), attached to the Opposition as Ex. B, ¶ 7.  The government set forth the details of the earlier investigation in its Opposition and will focus here on the evidence relating to the search and interview of the defendant that was presented at the hearing.  See Opposition, at 4-10.

On the morning of January 31, 2011, eight HSI agents arrived at the defendant's apartment.  See Transcript of Criminal Cause for Suppression Hearing, dated May 14, 2012

---

[1] The government incorporates by reference its Memorandum of Law in Opposition to the Defendant's Motion to Suppress, dated April 13, 2012 ("Opposition").

("Transcript"), attached hereto as Ex. A, at 87:15-17.[2]  Two of these agents, Special Agent Robert Raab and Special Agent Emily Bourne, testified at the hearing.  Agents Raab and Bourne both testified that the agents were not in uniform when they executed the search warrant.  Id. at 88:2-14; 147:6-23.  The testimony of the agents confirmed that, after arriving at the residence, agents identified themselves to the defendant's mother, displayed their credentials and informed her of the search warrant.  Id. at 90:9-17; 146:22-24.  Agent Raab testified that the defendant's mother allowed the agents into the residence. Id. at 93:6-7.

Agents Raab and Bourne both testified that once in the residence, the agents conducted a standard security sweep, checking for any weapons, persons, or other potential hazards. Id. at 93:19-25; 94:1-8; 162:5-13.  Agent Bourne testified that she was one of the agents who participated in the security sweep of the defendant's bedroom and that, when she entered, the defendant was in his bedroom and that he was given an opportunity to dress and then was asked to step into the kitchen where everything would be explained to him.  Id. at 147:24-25; 148:6-23.  Agent Bourne testified that the defendant appeared to and indicated that he understood this request. Id. at 149:2-10.

---

[2] Due to the size of the electronic file, the publicly available transcript is not be filed on ECF, but will be included in the courtesy copies provided to the Court and opposing counsel.

3

Agent Bourne testified that after the defendant dressed, she and one other agent escorted the defendant to the kitchen. Id. at 151:17-21. Agent Bourne further testified that the defendant was not restrained in any way while she was escorting him to the kitchen. Id. at 151:22-24; 152:22-24.

Agent Raab testified that he was present when the defendant was escorted into the kitchen and confirmed that he was not being physically restrained in any way. Id. at 102:23-103:9. Agents Raab and Bourne both testified that after the defendant arrived in the kitchen, they identified themselves, displayed their credentials and explained why they were there. Id. at 103:13-14; 103:19-25; 104:4-8; 154:10-14. Both agents testified that they explained to the defendant that he was not under arrest and asked if he was willing to be interviewed. Id. at 104:9-14; 154:10-14. Agents Raab and Bourne both confirmed that the defendant responded by indicating that he understood he was not under arrest and that he did not have to speak with agents. Id. at 105:1-7; 154:14-16.

Agent Bourne testified that the defendant stated that he was willing to be interviewed. Id. at 154:17-18. Agent Raab also testified that he asked the defendant if he needed to go to work or if the agents were otherwise delaying him, and that the defendant responded that he did not need to go anywhere. Id. at 104:17-19. According to the testimony of both agents, at no

4

point during the search or the interview was the defendant told
that he had to answer questions or speak with agents.  Id. at
104:15-22; 151:1-16.

Agents Raab and Bourne testified that they interviewed
the defendant for approximately forty-five to fifty minutes,
while other agents conducted the search of the apartment.  Id.
at 94:22-24; 108:1; 158:17-25.  Both agents also confirmed that
they were the only agents present in the kitchen for the
duration of the interview.  Id. at 103:15-18; 154:7-9.  Both
agents testified that they were facing the defendant during the
interview, id. at 105:14-24; 156:9-15, and that, at no point
during the interview, was an agent standing behind the
defendant.  Id. at 106:19-21; 156:19-21.  Both agents further
testified that at no point during the search or the interview
was there an agent stationed at the kitchen door, blocking the
exit.  Id. at 106:19-23; 156:19-25; 157:1-8.  Agents Raab and
Bourne both explained that, while they were interviewing the
defendant in the kitchen, his mother left the apartment through
the kitchen door, in full view of the defendant.  Id. at 107:12-
23; 157:12-17.

Agent Bourne testified that during the interview, the
defendant asked if he was *going to be* arrested and the agents
explained for the second time that he was not under arrest.  Id.
at 155:22-25.  Both agents testified that at no point did the

5

defendant indicate that he did not want to speak with the agents or that he wanted the interview to end.  Id. at 108:8-13; 155:1-11.  Agent Bourne further testified that at no point did the defendant ask to leave the apartment.  Id. at 108:14-16.  Agents Raab and Bourne both testified that the defendant was not handcuffed or otherwise restrained in any way, at any point during the execution of the search warrant or during the interview. Id. at 103:1-9; 150:15-25.

The defendant did not testify at the evidentiary hearing and only presented the testimony of his mother.  His mother, who was not present for the defendant's interview, did not contradict the key aspects of the testimony of Agents Raab and Bourne.  For example, the following facts were not contested at the hearing and thus are not in dispute:

> a.   The defendant was not handcuffed at any point during the execution of the search warrant or the interview.
>
> b.   The defendant was not physically restrained in any way during the interview.
>
> c.   Agents encountered the defendant in his bedroom while conducting a standard security sweep of the residence, gave him an opportunity to dress, and asked him to step into the kitchen where everything would be explained to him.
>
> d.   When the defendant arrived in the kitchen, Agents Raab and Bourne identified themselves, displayed their credentials, and explained why they were there.

e.   In the kitchen, Agents Raab and Bourne explained to the defendant that he was not under arrest and that he did not have to speak with agents.

f.   The defendant indicated that he understood that he was not under arrest and did not need to speak with agents, and he stated that he was willing to be interviewed.

g.   Agent Raab asked the defendant if he needed to go to work or if the agents were otherwise delaying him and the defendant replied that he did not need to go anywhere.

The defendant's mother, in fact, confirmed several facts presented by the government.  She confirmed that agents displayed their credentials when they arrived at the residence, Tr. at 21:9-10, although she testified that the agents were in full uniform and wearing hats.  Id. at 20:21-24.  She confirmed that on entering the apartment, agents asked her whether there were any weapons in the residence and began searching the premises, consistent with the standard security sweep described by Agents Raab and Bourne. See id. 21:19-20 (M. Bershchanskaya testifying that agents asked whether there were any weapons in the house); id. at 23:16-18 (testifying that agents went upstairs); id. at 26:14-15 (testifying that agents asked the defendant if there were any weapons in the house); id. at 28:16-17 (testifying that agents asked the defendant to sit and keep his hands in view while in the bedroom); id. at 29:20-24 (testifying that agents had flashlights while conducting a security sweep of the dark bedroom).  The defendant's mother

7

also confirmed that she exited the residence through the kitchen door in full view of the defendant while he was being interviewed in the kitchen. Id. at 34:8-16.

The testimony of the defendant's mother was inconsistent with that of Agents Raab and Bourne on only three main issues. First, the defendant's mother testified that while she was in her bedroom, the door was ajar for about five seconds, with a gap of approximately eighteen inches. Id. 59:5-7; 59:15-16. She testified that during those five seconds, through the gap in the door, she heard an agent say to the defendant: "You have to answer some questions if you don't want to be arrested." Id. at 64:21-24; 65:9-10. The defendant's mother testified at the hearing that these were the exact words of the agent, id. at 65:14-16, although this is undermined both by her very limited command of the English language and the fact that she claimed in her sworn affidavit that an agent said simply "that my son has to answer some questions." M. Bershchansky Aff. at ¶ 19.

Second, the defendant's mother testified that during the same five second period when her bedroom door was ajar, she saw the defendant walking past, accompanied by agents. Tr. at 60:10-17. She claimed that she saw an agent with one hand on her son's right shoulder and another on his left wrist. Id. 62:5-12. She further stated that the defendant's right wrist

was not restrained in any way, id. at 19-21, although she stated in her affidavit that she saw an agent escorting her son "holding [her] son's hands behind his back."  M. Bershchansky Aff. at ¶ 18 (emphasis supplied).  On cross-examination, the defendant's mother revised her testimony once more to say that an agent was lightly touching both of the defendant's wrists with one hand. Tr. at 64:2-3; see also id. at 64:17-20 (M. Bershchanskaya testifying that the defendant could have pulled away from the agent).

Third, the defendant's mother testified that when the defendant was being interviewed in the kitchen there were approximately six agents present, one of whom stood behind the defendant.  Tr. at 34:22-24; 35:5-7.  The defendant's mother testified that one of these agents was stationed in front of the door, id. at 35:5, although she also testified that she freely left the apartment through this very door. Id. at 72:23-25.

As set forth below, the testimony of the defendant's mother in each of these three areas lacks credibility and is at odds with the consistent and credible testimony of Agents Raab and Bourne.

**ARGUMENT**

I.   The Defendant's Non-Custodial Statements to Law Enforcement
     Should Not Be Suppressed

          "A defendant seeking to suppress evidence bears the

burden of showing the existence of disputed issues of material

fact."  United States v. Robinson, 153 F. Supp. 2d 188, 191

(E.D.N.Y. 20011) (citing United States v. Pena, 961 F.2d 333,

338 (2d Cir. 1992)).  Once the defendant has established a basis

for a motion to suppress statements, the burden shifts to the

government to demonstrate by a preponderance of the evidence

that the statements were lawfully obtained.  See Colorado v.

Connelly, 479 U.S. 157, 168 (1986) (finding that the state need

only prove waiver by a preponderance of the evidence); see also

United States v. Matlock, 415 U.S. 164, 178 n. 14 (1974) ("the

controlling burden of proof at suppression hearing should impose

no greater burden than proof by a preponderance of the

evidence").  At the evidentiary hearing, the government

satisfied this burden, proving by a preponderance of the

evidence that the defendant was not in custody when he was

interviewed by agents on January 31, 2011.

     A.   The Government Demonstrated by a Preponderance of the
          Evidence that the Defendant was Not In Custody During
          the Interview

          An individual is not in custody for the purposes of

Miranda if he is not "deprived of his freedom of action in any

10

significant way." Beckwith v. United States, 425 U.S. 341, 347 (1976) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also United States v. Burke, 700 F.2d 70, 84 (2d Cir. 1983). In determining whether a person is in custody, the court must view the totality of the circumstances. United States v. Glover, 957 F.2d 1004, 1014 (2d Cir. 1992). "[I]n the absence of actual arrest, an interrogation is not 'custodial' unless the authorities affirmatively convey the message that the defendant is not free to leave." United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992); see also United States v. Guarno, 819 F.2d 28, 31-32 (2d Cir. 1987) ("[I]n the absence of arrest something must be said or done by the authorities, either in their manner or approach or in the tone or extent of their questioning which indicates that they would not have heeded a request to depart or to allow the suspect do so."). The ultimate inquiry in determining whether an individual was in custody is "whether there [was] a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." Stansbury v. California, 511 U.S. 318, 322 (1994) (citing California v. Beheler, 463 U.S. 1121, 1125 (1983)) (*per curiam*) (internal quotations and citations omitted).[3]

---

[3]   The discussion in the defendant's post-hearing brief of the standard for so-called "Terry stops" is irrelevant.  See Def.'s Br. at 10-11.  This case involved the execution of a search warrant and a consensual interview.  The defendant was not

In this case, it is clear that a reasonable person in the defendant's place would not have considered himself to be in custody.  First, as the government noted in its Opposition, the defendant was in the kitchen of his own home during the interview.  Opp'n at 30.  One's own home is clearly a far less intimidating environment for speaking with law enforcement agents, than, for example, a police station – the type of environment in which Miranda was meant to apply.  See Illinois v. Perkins, 496 U.S. 292, 296 (1990) ("The warning mandated by Miranda was meant to preserve the privilege during 'incommunicado interrogation of individuals in a police-dominated atmosphere.'") (quoting Miranda, 384 U.S. at 446); see also United States v. Newton, 369 F.3d 659, 675 (2d Cir. 2004) ("interrogation in the familiar surroundings of one's own home is generally not deemed custodial").

Second, the conduct of the agents, as well as the interactions between the defendant and the agents, would not have suggested to a reasonable person in the defendant's place that he was under arrest.  The defendant was twice informed that

detained for a "Terry stop" or otherwise.  To the extent the defendant is arguing that the length of the interview should be considered, courts have found that an interview of 45 minutes to an hour, the length of the defendant's interview in this case, does not itself suggest a custodial interrogation.  See, e.g., United States v. Lifshitz, 2004 WL 2072468, at *8 (S.D.N.Y Sept. 15, 2004) (unpublished opinion) ("[I]nterview [that] was not overly long[,] lasting approximately 45 minutes to one hour" was non-custodial).

he was not under arrest and was told before the interview that
he did not have to speak with agents.  Tr. at 104:9-14; 154:14-
16; see also id. at 104:15-22 (Agent Raab testifying that at no
point during the search or interview was the defendant told that
he had to answer questions or speak with agents); id. at 151:1-
16 (Agent Bourne testifying to the same).

It is undisputed that the defendant indicated that he
understood he was not under arrest and that he did not have to
speak with agents.  Id. at 105:1-7.  In fact, it is also
uncontested that the defendant affirmatively stated that he was
willing to be interviewed by the agents.  Id. at 154:17-18.  The
defendant never indicated that he wanted to leave the apartment,
id. at 108:14-16, when asked if he needed to go to work or if
the agents were otherwise detaining him, the defendant stated
that he did not need to go anywhere.  Id. at 104:17-19.  At no
point during the interview did the defendant indicate that he
did not want to speak to agents or that he wanted the interview
to end.  Id. at 108:8-16; 155:1-11.  The defendant also was
never handcuffed or physically restrained.  Id. at 103:1-9;
150:18-25.  These facts are inconsistent with "a formal arrest
or restraint on freedom of movement of the degree associated
with a formal arrest" and so the Court should conclude that the
defendant was not in custody.  Stansbury, 511 U.S. at 322
(1994).

The testimony of the defendant's mother does nothing to disturb this this conclusion.  First, no weight can be given to the claim that she heard an agent say to the defendant: "You have to answer some questions if you don't want to be arrested." Tr. at 65:9-10.  In her sworn affidavit, she stated that she "heard that the officer said that my son has to answer some questions."  M. Bershchansky Aff. at ¶ 19. It was not until the evidentiary hearing that she added for the first time the claim that the agents mentioned the possibility of an arrest. Moreover, Agent Bourne, who was present at the relevant times, testified unequivocally that this was never said, Tr. at 151:1-16, and the limited English skills of the defendant's mother make it unlikely that she would be a better witness to what was said.

Similarly, the claim by the defendant's mother that the defendant's hands were restrained in the hallway between the bedroom and the kitchen is not credible.  In her affidavit, the defendant's mother testified that she saw an agent escorting her son "holding [her] son's hands behind his back."  M. Bershchansky Aff. at ¶ 18.  At the hearing, she first testified that she saw an agent with one hand on her son's right shoulder and another on his left wrist, but that his right wrist was not restrained in any way.  Tr. 62:5-21.  On further cross-examination, she then testified that the agent was holding both

14

of the defendant's wrists with one hand.  Id. at 64:2-4.  In any event, the defendant's mother claims to have seen this when she was looked through a partially opened door for about 5 seconds into a dark hallway.  Id. 59:5-7; 59:15-16.  She also claims that two male agents escorted her son, whereas Agent Bourne – a woman – made clear that she was one of the agents who was with the defendant at the time.  Compare id. at 59:23-60:9 with 151:17-21.

Agent Bourne testified unequivocally that the defendant was not restrained.  Id. at 151:22-23; 152:22-24.  However, even if it were true, as the defendant's mother claims, that an agent was lightly touching both of the defendant's wrists with one hand when they moved from the bedroom to the kitchen (a reasonable precaution for officer safety), Tr. at 64:2-4, this is of no moment, given that the defendant's mother acknowledged that the defendant could have pulled away, which makes clear there was not a "restraint on freedom of movement of the degree associated with a formal arrest."  Tr. at 64:17-20; Stansbury, 511 U.S. at 322.  Similarly, the claim that an agent was stationed in front of the kitchen door, blocking the exit, Tr. at 35:12-13, while untrue, is irrelevant given that the defendant's mother was not prevented from exiting through this very door and thus no "restraint on freedom" occurred.  Id. at 72:23-25.

15

In sum, while the claims put forth by the defendant's mother are not credible, even if they were true, they would not change the fact that the defendant was not in custody when he was interviewed.  <u>See</u> Opposition at 28-34.  For these reasons, as well as those set forth in its Opposition, the government respectfully requests that the defendant's claim that he was in custody at the time of his confession be rejected and that his motion be denied.

B.   The Defendant's Arguments in His Post-Hearing Brief are Meritless

The government has demonstrated by a preponderance of the evidence that the defendant's pre-arrest statements were not custodial and the defendant presented no credible evidence to suggest otherwise.  In his post-hearing briefing, the defendant relies heavily on a number of inaccurate statements regarding the testimony elicited at the hearing, without citation to the record.  <u>See</u> Defendant's Post-Hearing Brief in Support of Motion to Suppress, dated June 26, 2012 ("Brief").  For example, the following statements set forth in the Defendant's Brief are unsupported by the record:

i.   "Mr. Bershchansky was surrounded by federal agents at all times during the search and questioning." Br. at 13, ¶ (i)(c). As the government noted in its Opposition, this statement remains unsupported by the record. <u>See</u> Opp'n at 27.

16

ii. "Mr. Bershchansky's access to the exit door was blocked by the federal agent." Br. at 13, ¶ (i)(e). Testimony from both Agents Raab and Bourne demonstrated that at no time during the interview was an agent blocking the exit door. See Tr. at 106: 19-23; 157:1-8. Further, the defendant's mother testified, and the testimony of the agents confirmed, that she exited the door in full view of the defendant, demonstrating that the door was not blocked. Id. at 36:19; 107:12-23; 157:15-17.

iii. "The Government introduced no evidence as to . . . who actually escorted Mr. Bershchansky to the kitchen and the manner of his escort." Br. at 14, ¶ (g). Agent Bourne testified that she and one other agent escorted Bershchansky to the kitchen. Tr. at 151:17-21. Agent Bourne further testified that Bershchansky was not restrained in any way during the walk to the kitchen. Id. at 151: 22-23; 152: 22-24.

iv. "Ms. Bershchankaya . . . saw agents restricting movement of Mr. Bershchansky by physically holding his hands behind his back. She also heard that the agent told Mr. Bershchansky that he has to answer a couple of questions if he doesn't want to be arrested. No evidence to the contrary was presented by the government." Br. at 15, ¶ (h). The government presented evidence demonstrating the inaccuracy of both of these assertions. Agent Bourne testified that while she was escorting the defendant to the kitchen, he was not restrained in any way. Tr. at 151: 22-23; 152: 22-24. Further, Agents Bourne and Raab both testified that at no point did they tell the defendant that he would be arrested if he did not answer questions, nor did they hear any other agent make such a statement. Id. at 104:15-22; 151:1-16.

In addition, the defendant focuses in his post-hearing brief on testimony concerning the subjective impressions of the defendant's mother. See, e.g., Br. at 13 ("Mr. Bershchanskaya

17

was under impression that her son was under arrest."); id. at 14
("Mr. Bershchansky appeared very intimidated by the environment
during the interrogation."). The subjective impression of the
defendant's mother is legally irrelevant to the question of
whether the interview of the defendant was custodial. See
Stansbury, 511 U.S. at 323 (1994) (determination whether
interrogation is custodial is an objective one). When
determining whether an interview was custodial, "the only
relevant inquiry is how a reasonable man in the suspect's
position would have understood his situation." Id. (quoting
Berkemer v. McCarty, 468 U.S. 420, 324 (1984)).

Third, the defendant tries to support his position by
relying almost exclusively on what happened during the security
sweep in the defendant's bedroom – rather than the conditions of
the interview itself. See, Br. at 14. Although he claims that
the government offered "no evidence" as to what happened in his
bedroom, id., Agents Raab and Bourne both testified that agents
conducted a standard security sweep of the residence, including
the defendant's bedroom, where they checked for any weapons,
persons or other potential hazards. Tr. at 93:19 – 94:8;
162:11-13. Agent Bourne, who participated in this sweep,
testified that she heard another agent ask the defendant to step
down to the kitchen where everything would be explained to him

18

and that the defendant was then given an opportunity to dress
before being escorted downstairs.  Id. at 148:6-8; 14-23.[4]

Even if it were true, as the defendant's mother
claims, that the early morning security sweep was startling, or
even frightening, this would not indicate that the later
interview in the kitchen was custodial.  See United States v.
Cunningham, 2012 WL 369923, at *4 (D. Vt. Feb. 3, 2012)
(unpublished opinion) (finding that a brief restraint on the
defendant's freedom during a safety sweep of the premises was
"not inconsistent with a finding that interrogation that
occurred thereafter was noncustodial") (citing United States v.
Badmus, 325 F.3d 133, 139 (2d Cir. 2003) (holding that
interrogation was non-custodial when officers told defendant he
was not under arrest and could leave, despite the fact that
defendant was not able to move freely in the house)).  Being
awakened at 6:00 a.m. and asked to remain seated on the bed with
his hands visible, Br. at 12, merely "constituted a temporary
and reasonable measure to ensure officer safety."  See id.  Such
conditions, typical in the execution of any search warrant, do

---

[4] The defendant also states that the "lack of the government's
evidence" as to what happened in the bedroom "nullifies the
significance of the government's 'never been handcuffed'
argument."  Br. at 14.  At the hearing, Agents Raab and Bourne
both testified that at no point during the search or interview
was the defendant handcuffed.  Tr. at 103:1-9; 150:18-25.  No
evidence to the contrary has ever been presented.

not support a finding that the defendant was in custody during the subsequent interview.

## II.   The Search Warrant Was Supported by Probable Cause and There Is No Basis for a *Franks* Hearing

The defendant raises two other arguments in support of his motion to suppress.  First, he claims that there was not probable cause for the search warrant because the underlying affidavit was insufficiently detailed.  See Br. at 17-20. Second, the defendant argues that he is entitled to a Franks hearing, claiming that Agent Raab intentionally omitted material facts from the search warrant affidavit.  See Br. at 20-21.  The government addressed these arguments at length in its Opposition.  See Opp'n at 15-27.  Additionally, at the hearing, the Court noted: "this affidavit . . . does establish probable cause and does not indicate that there is a false or misleading statement."  Tr.at 17:18-20.  For these reasons, the government will not repeat the substance of its Opposition here, but will simply address the additional case law that has been cited by the defendant.

In support of his claim that more detail was required in the affidavit, the defendant cites United States v. Schimley, 2009 WL 5171826 (N.D. Ohio 2009).  The defendant in that case, like the defendant here, argued that the search warrant for his home would have been supported by probable cause only if the

20

agent had specifically described the SHA-1 hash values,
demonstrating that the child pornography files found on his
computer matched those accessed by the agent from other sources.
See id. at *7.  In his brief, the defendant claims that the
court's opinion in Schimley "seems to suggest the warrant in
this case would have been supported by probable cause only if
the agent had specifically described the matching SHA hash
values."  Br. at 18. In fact, after reviewing the common-sense
approach used by courts to determine whether probable cause
existed for a search warrant, the Schimley court concluded:
"This commonsense approach *forecloses any notion* of a
constitutional mandate that a warrant affidavit like the one at
issue specify the relevant SHA-1 hash values." Schimley, 2009 WL
5171826 at *7 (emphasis added).

        The defendant also cites United States v.
Voustianiouk, 2009 WL 2390246 (S.D.N.Y. 2009), to support his
claim that the search warrant affidavit was not sufficiently
detailed.  As the Court noted at the hearing, Voustianiouk is
clearly distinguishable.  See Tr. at 8:19-14; 9:1-8.  In
Voustianiouk, the court found that a search was not supported by
probable cause because the search warrant affidavit did not
describe the child pornography file allegedly located on the
defendant's home computer.  2009 WL 2390246 at *3-4.
Specifically, the affidavit described a file named "1.avi" as

"known child pornography," without providing any details as to how this was "known" or any descriptions of the material contained on the file. Id.

By contrast, the search warrant affidavit in this case not only described in detail the investigative process which led to the identification of the pornographic files on the defendant's computer, but also identified and described the contents of several files with file names indicative of child pornography. See Special Agent Robert Raab's Affidavit in Support of Search Warrant, dated January 24, 2011 ("Raab Aff."), attached to the Opposition as Ex. 1, ¶¶ 17(a)-(c) (providing file names and a description of the files' contents). See also Tr. 15:7-10 (Court noting that in Voustianiouk, the file name was "AV.1," while the file name in this case – "8-year-old preteen girl raped by 16-year-old brother" – is "suggestive of child pornography"). As set forth in its Opposition, the government maintains that the search warrant affidavit sets forth more than sufficient evidence, at a sufficient level of detail, to establish probable cause. See Opp'n at 15-21.

Finally, the defendant's renewed request for a Franks hearing is similarly without merit. The defendant has not met his burden of making a "substantial preliminary showing" that the warrant affidavit contained a deliberate falsehood or statement made with reckless disregard for the truth and that

this statement was necessary to the judge's finding of probable cause.  See Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Simply put, the defendant has not identified a single statement in the affidavit that is false or misleading, either at the hearing or in post-hearing briefing.  See Tr. at 17:12-14 (noting that the defendant has not identified any false or misleading statements).  Accordingly, a Franks hearing is unwarranted.

**CONCLUSION**

For the foregoing reasons, the government respectfully submits that the defendant's motion to suppress the evidence seized during the search of his residence and his pre-arrest statements should be denied in its entirety.

Dated:      Brooklyn, New York
            July 13, 2012

Respectfully submitted,

LORETTA E. LYNCH,
United States Attorney,
Eastern District of New York.

By:     ____/s/_____
        M. Kristin Mace
        Assistant United States Attorney
        (718) 254-6879